IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
SAMUEL CULLEY; THOMAS PRICE; and
ERVAN WATERS

                              *Plaintiffs*,

     -against-

LELAND ROBINSON; PILLOW TALK INC;
BEN GHAZI MUSIC INC; BEN GHAZI
ENTERPRISES 2 NJ LLC; GAMBI MUSIC
INC; GAMBI MUSIC 2 LLC; SUGARHILL
MUSIC PUBLISHING LTD; DIAMOND
HEAD MUSIC INC. d/b/a TWENTY NINE
BLACK; GHATI MUSIC INC; UNIVERSAL
MUSIC PUBLISHING INC; 100
ENTERTAINMENT, INC.

                              *Defendants*
---------------------------------------------------------x

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs SAMUEL CULLEY, THOMAS PRICE, and ERVAN WATERS, (collectively, "**Plaintiffs**"), by their attorneys, ANDERSON AND ASSOCIATES LAW, P.C., brings this action against Defendants LELAND ROBINSON in his individual capacity, PILLOW TALK INC, BEN GHAZI MUSIC INC, BEN GHAZI ENTERPRISES 2 NJ LLC, GAMBI MUSIC INC, GAMBI MUSIC 2 LLC, SUGARHILL MUSIC PUBLISHING LTD, DIAMOND HEAD MUSIC INC. d/b/a TWENTY NINE BLACK, GHATI MUSIC INC, UNIVERSAL MUSIC PUBLISHING INC, and 100 ENTERTAINMENT, INC. (collectively, "**Defendants**"), and plead the following:

## NATURE OF THE ACTION

1. Plaintiffs bring this action to recover monetary damages, and to obtain equitable relief, pursuant to the Copyright Act of 1976, 17 USC § 101 *et seq.* as a result of Defendants'

exploitation of the work "*No Smoke At the Polo Lounge*," performed by The Game, ft. Jeremih, as it infringes upon Plaintiffs' copyright in the musical composition "*I've Got The Kind Of Love*."

2. Plaintiffs have been, and remain to this day, the exclusive copyright owners of the musical composition "*I've Got The Kind Of Love*." Upon information and belief, Defendants reproduced, distributed, and publicly performed, and/or authorized the reproduction, distribution, and public performance of "*No Smoke at the Polo Lounge*."

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction, pursuant to 28 USC § 1331 and 1338(a), because this action arises under the Copyright Act, 17 USC § 101 *et seq*.

4. Venue is proper in the Southern District of New York, pursuant to 28 USC § 1400(a), because Defendants or their agents may be found in this District.

## JURY DEMAND

5. Plaintiffs respectfully request a trial by jury.

## PARTIES

*Plaintiffs "The Diplomats"*

6. Plaintiff Culley is a musician, songwriter, and performer, who is a citizen of the State of Connecticut. Cully resides in Middlesex County, Connecticut.

7. Plaintiff Price is a musician, songwriter, and performer, who is a citizen of the State of New York. Price resides in Queens County, New York.

8. Plaintiff Waters is a musician, songwriter, and performed, who is a citizen of the State of Maryland. Waters resides in Wicomico County, Maryland.

9. In the late 1960s, Plaintiffs wrote, recorded, and performed songs, collectively as a musical group known as The Diplomats.

10. In the early 1970's, Plaintiffs Culley and Waters also began to write, record, and perform songs collectively as a musical group known as The Skull Snaps.

*Defendants*

11. Upon information and belief, Defendant Leland Robinson ("**Robinson**") is an individual residing in Englewood, New Jersey.

12. Upon information and belief, Defendant Robinson regularly and consistently conducts business in New York with various record labels, recording artists and songwriters, and performing and mechanical rights organizations such as ASCAP and BMI.

13. Upon information and belief, Defendant Pillow Talk Inc. ("**Pillow Talk**") is a corporation organized and exiting under the laws of the State of New Jersey, with a registered address of 302 Howell Road, Englewood, New Jersey 07631, and a principal place of business at 443 Liberty Road, Englewood, New Jersey.

14. Upon information and belief, Defendant Ben Ghazi Music, Inc. ("**Ben Ghazi**") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

15. Upon information and belief, Defendant Ben Ghazi Enterprises 2 NJ LLC ("**Ben Ghazi 2**"), is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

16. Upon information and belief, Defendant Gambi Music, Inc. ("**Gambi**") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

17. Upon information and belief, Defendant Gambi Music 2, LLC. ("**Gambi 2**") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

18. Upon information and belief, Defendant Sugarhill Music Publishing Ltd. ("**SMP**"), is a corporation organized and existing under the laws of the State of New Jersey with a registered address of 96 West Street, Englewood, New Jersey, and a principal place of business at 443 Liberty Road, Englewood, New Jersey.

19. Upon information and belief, Defendant Diamond Head Music, Inc. d/b/a Twenty Nine Black ("**Twenty Nine Black**"), is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

20. Upon information and belief, Defendant Ghati Music, Inc. ("**Ghati**") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 443 Liberty Road, Englewood, New Jersey.

21. Upon information and belief, Robinson is the owner and operator of, and/or controls in some manner, the Defendants Pillow Talk, Ben Ghazi, Ben Ghazi 2, Gambi, Gambi 2, SMP, Twenty Nine Black, and Ghati. (collectively the "**Sugar Hill Defendants**").

22. Upon information and belief, the Sugar Hill Defendants are mere alter egos of Defendant Robinson, and of each other. Upon information and belief, Robinson and the Sugar Hill Defendants conduct systematic and continuous business within, and derives substantial revenue from, the State of New York, including within this judicial district.

23. Upon information and belief, Universal Music Publishing, Inc. ("**UMP**") is a corporation organized and existing under the laws of the State of California with a place of business at 1755 Broadway, New York, New York.

24. Upon information and belief, Defendant UMP conducts systematic and continuous business in the State of New York, including but not limited to, reproducing, distributing, and publicly performing, and/or authorizing the reproduction, distribution, and public performance of "*No Smoke at the Polo Lounge*."

25. Upon information and belief, Defendant 100 Entertainment Inc. ("**100 Ent**") is a corporation organized and existing under the laws of the State of California, with a principal place of business at 400 South Beverly Drive, Suite 420, Beverly Hills, California.

26. Upon information and belief, Defendant 100 Ent conducts systematic and continuous business in the State of New York, including but not limited to, reproducing, distributing, and publicly performing, and/or authorizing the reproduction, distribution, and public performance of "*No Smoke at the Polo Lounge*."

## FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

*Plaintiffs' Copyright – "I've Got The Kind Of Love" by The Diplomats*

27. In 1969, Plaintiffs jointly authored a musical composition titled "*I've Got The Kind Of Love.*" The copyright to this composition is properly registered with the U.S. Copyright Office under Registration Number **PA0002080191**. Plaintiffs are the creators and exclusive owners of the copyright to the musical composition "*I've Got The Kind Of Love.*"

28. Plaintiffs performed and recorded "*I've Got The Kind Of Love*" work as a musical group called The Diplomats. The sound recording of "*I've Got The Kind Of Love*" was released

in 1969 by Dynamo Records label as a "B-side" to the song "*In The Ghetto*." Dynamo Records held the rights to the sound recording of "*I've Got The Kind Of Love*" until 1984.

29. In April 1984, Dynamo Records began to wind down their business and the sound recording of "*I've Got The Kind Of Love*" was sold to Gusto Records.

30. The copyright for the musical composition has remained in the possession of Plaintiffs. The reproduction, preparation of a derivative work, distribution, public performance, and/or the synchronization of the composition "*I've Got The Kind Of Love*" without Plaintiffs' permission constitutes copyright infringement under Copyright Act of 1976.

*The Skull Snaps and the Sugar Hill Entities*

31. After Culley and Waters formed The Skull Snaps, Culley began working closely with an individual, Lloyd Price. Lloyd Price introduced Culley to George Kerr ("**Kerr**"), a producer who worked with the label GSF and who became the producer for all musical works performed and recorded by the Skull Snaps while under GSF.

32. Upon information and belief, the music Kerr provided to the Skull Snaps to perform and record, was written by songwriters who worked under one of the various Sugar Hill entities, named and/or unnamed. The Sugar Hill entities retained 40% of the publishing rights in the Skull Snaps musical works that were recorded under GSF. Upon information and belief, the 40% share of the publishing rights for some or all of the musical works of the Skull Snaps are now in the possession of Defendant Gambi Music, Inc.

33. Upon information and belief, in or around 1975, each of the Sugar Hill entities were owned and/or operated, by Sylvia and/or Joseph (a/k/a "Joey") Robinson. Upon information and belief, Defendant Leland Robinson is now the owner and operator of, and/or controls in some

manner, each of the Sugar Hill entities, and thus, the owner of 40% of the publishing rights to the Skull Snaps works that were recorded under GSF.

*Administration Agreement Between UMP and the Sugar Hill Entities*

34. Upon information and belief, in or around 2012 and 2013, Joseph Robinson entered into a multi-million-dollar transaction with UMP, whereby UMP would administer their entire catalog of works (the "**Administration Agreement**"). This agreement, upon information and belief, includes all works under Sugar Hill Defendants, and/or other unnamed entities affiliated with the Robinsons.

35. Upon information and belief, "*I've Got The Kind Of Love*" by The Diplomats was included in this transaction as part of the Sugar Hill entities' catalogs. Defendant Robinson and his various entities, named and/or unnamed, did not, and do not have ownership rights or any authority to grant administration rights to Defendant UMP over Plaintiffs' musical composition "*I've Got The Kind Of Love.*"

*The Infringing Work "No Smoke at the Polo Lounge"*

36. Upon information and belief, Defendant 100 Ent began acquiring licensing rights to sample "*I've Got The Kind Of Love*" for the performance and recording of "***No Smoke at the Polo Lounge***" in the year 2022.

37. Upon information and belief, prior to the release of "***No Smoke at the Polo Lounge***," Defendant 100 Ent obtained a license from Gusto Records to use the sound recording of "*I've Got The Kind of Love*" in their work. Upon information and belief, Defendant 100 Ent also obtained a license from Defendant UMP to use the musical composition for a fee of $2,500.00. UMP had no authority to grant such use as they were not the copyright owners of the musical

composition, regardless of the Administration Agreement. Plaintiffs have always been, and remain to this day, the exclusive owners of the musical composition to "*I've Got The Kind Of Love*."

38. On or around August 12, 2022, "*No Smoke at the Polo Lounge*" was published and made publicly available for sale, download, online streaming, and purchase by other commercial means, including but not limited to Apple Music, Spotify, YouTube Music, iHeartRadio, Deezer, and Pandora, by Virgin Music Label and Artist Services, a division or affiliate of Defendant UMP.

39. "*No Smoke at the Polo Lounge*" was released as a part of the album Drillmatic: Heart vs. Mind. The album peaked at #12 on the Billboard 200, where it won a Billboard award for Greatest Gains in Weekly Performance, and #8 on Billboard Top R&B/Hip-Hop Albums charts. A video published by UMP on YouTube "*No Smoke at the Polo Lounge*" currently has over 400,000 views.

40. Plaintiffs never granted authority or consent to any of the Defendants involved in the recording and performing of "*No Smoke at the Polo Lounge*," nor did they grant any license to reproduce, prepare a derivative work, distribute, publicly perform, synchronize, or otherwise use, Plaintiffs' musical composition "*I've Got The Kind Of Love*." Plaintiffs were never contacted by any of the named Defendants.

41. "*No Smoke at the Polo Lounge*" constitutes an unauthorized reproduction and an unauthorized preparation of a derivative work based upon Plaintiffs' copyrighted composition "*I've Got The Kind Of Love*."

42. "*No Smoke at the Polo Lounge*" is substantially similar to "*I've Got The Kind Of Love*." The former contains and embodies multiple recognizable and protectable elements of Plaintiffs' musical composition. s

43. "*No Smoke at the Polo Lounge*" is so substantially and/or strikingly similar to "*I've Got The Kind Of Love*" that ordinary observers would recognize the usage and similarity. WhoSampled.com, self-described as "the world's most comprehensive, detailed and accurate database of samples, cover songs and remixes, covering the entire history of music spanning over 1,000 years, recognized that "*I've Got The Kind Of Love*" appears at multiple points throughout "*No Smoke at the Polo Lounge*."

44. Upon information and belief, Defendant Robinson and the Sugar Hill Defendants intentionally and unlawfully infringed upon Plaintiffs exclusive rights to reproduce and prepare derivative works of their copyright "*No Smoke at the Polo Lounge*."

45. Upon information and belief, Defendants 100 Ent and UMP unlawfully infringed upon Plaintiffs' exclusive rights to reproduce and prepare derivative works of their copyright "*No Smoke At the Polo Lounge*."

**AS AND FOR A FIRST CAUSE OF ACTION**

**Direct Copyright Infringement Against Defendant Robinson and the Sugar Hill Defendants**

46. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

47. Upon information and belief, Defendant Robinson and the Sugar Hill Defendants had access to "*I've Got The Kind Of Love*."

48. Upon information and belief, Defendant Robinson and the Sugar Hill Defendants' conduct has at all times been knowing and willful. "*No Smoke at the Polo Lounge*" was released in August 2022, almost five (5) years after Plaintiffs' copyright was formally registered.

49. Upon information and belief, Defendant Robinson and the Sugar Hill Defendants encouraged and enabled others to infringe Plaintiffs' copyright in "*I've Got The Kind Of Love*." Without Plaintiffs' authority or a proper license, Defendant Robinson and the Sugar Hill

Defendants granted administration rights to Plaintiffs' copyrighted composition to Defendant UMP, who in turn, reproduced and created a derivative work of Plaintiffs' composition.

50. Upon information and belief, Defendant Robinson and the Sugar Hill Defendants have profited from ""***No Smoke at the Polo Lounge,***" an unauthorized and reproduction and derivative work based upon "***I've Got The Kind Of Love***."

51. As a direct and proximate result of Defendant Robinson and the Sugar Hill Defendants' infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

52. Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 under 17 USC § 504(c).

53. Furthermore, Plaintiffs are entitled to attorneys' fees and costs under 17 USC § 505.

## AS AND FOR A SECOND CAUSE OF ACTION
### Direct Copyright Infringement Against Defendant UMP

54. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 53, as if fully set forth herein.

55. Upon information and belief, Defendant UMP had access to "***I've Got The Kind Of Love***."

56. Upon information and belief, UMP is the distributor of "***No Smoke at the Polo Lounge***" and in this capacity, reproduced and unlawfully distributed copies of the composition "***No Smoke at the Polo Lounge,***" an unauthorized and reproduction and derivative work based upon "***I've Got The Kind Of Love***."

57. Since 2022, Defendant UMP has exploited "***No Smoke at the Polo Lounge,***" and upon information and belief, has profited therefrom.

58. As a direct and proximate result of Defendant UMP's infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

59. Alternatively, Plaintiffs are entitled to the maximum statutory damages in such amounts as may be proper under 17 USC § 504(c).

60. Furthermore, Plaintiffs are entitled to attorneys' fees and costs under 17 USC § 505.

## AS AND FOR A THIRD CAUSE OF ACTION
### Direct Copyright Infringement Against Defendant 100 Ent

61. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 60, as if fully set forth herein.

62. Upon information and belief, Defendant 100 Ent had access to "*I've Got The Kind Of Love*."

63. Upon information and belief, 100 Ent is the record label that produced and recorded "*No Smoke at the Polo Lounge*" and in this capacity, reproduced and unlawfully distributed "*No Smoke at the Polo Lounge,*" an unauthorized and reproduction and derivative work based upon "*I've Got The Kind Of Love*."

64. Since 2022, Defendant 100 Ent has exploited "*No Smoke at the Polo Lounge,*" and upon information and belief, profited therefrom.

65. As a direct and proximate result of Defendant 100 Ent' Defendants infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

66. Alternatively, Plaintiffs are entitled to the maximum statutory damages in such amounts as may be proper under 17 USC § 504(c).

67. Furthermore, Plaintiffs are entitled to attorneys' fees and costs under 17 USC § 505.

## AS AND FOR A FOURTH CAUSE OF ACTION

**Contributory Copyright Infringement Against Robinson and the Sugar Hill Defendants**

68. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 67, as if fully set forth herein.

69. Defendant Robinson and the Sugar Hill Defendants induced and encouraged other Defendants to infringe upon Plaintiffs' copyright in "*I've Got The Kind Of Love*" by entering into an Administration Agreement that included Plaintiffs' work.

70. Defendant Robinson and the Sugar Hill Defendants entered into the Administration Agreement with full knowledge, actual and/or constructive, of the infringing activities alleged herein.

71. Defendant Robinson and the Sugar Hill Defendants knew or should have known that including Plaintiffs' work "*I've Got The Kind Of Love*" within the Administration Agreement with Defendant UMP would lead to infringement of Plaintiffs' work.

72. Without Defendant Robinson and the Sugar Hill Defendants conduct, Defendant UMP would not have been able to grant a license to Defendant 100 Ent for use in the production of "*No Smoke at the Polo Lounge*."

73. As a direct and proximate result of Defendant UMP's infringement, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

74. Alternatively, Plaintiffs are entitled to the maximum statutory damages in such amounts as may be proper under 17 USC § 504(c).

75. Furthermore, Plaintiffs are entitled to attorneys' fees and costs under 17 USC § 505.

## AS AND FOR A FIFTH CAUSE OF ACTION

**Vicarious Copyright Infringement Against All Defendants**

76. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 75, as if fully set forth herein.

77. Upon information and belief, Defendant have all profited from the unlawful infringement of Plaintiffs' copyright in "*I've Got The Kind Of Love*."

78. Upon information and belief, Defendant Robinson and Sugar Hill Defendants profited from the Administration Agreement with Defendant UMP that included Plaintiffs' copyright.

79. Upon information and belief, Defendant UMP profited from the licensing of Plaintiffs' copyright to Defendant 100 Ent.

80. Upon information and belief, Defendant 100 Ent has profited from the production of "*No Smoke at the Polo Lounge*" which infringes upon Plaintiffs' copyright in the musical composition of "*I've Got The Kind Of Love*."

81. Upon information and belief, each and every named Defendant had, and continue to have, the right and ability to supervise and/or control the reproduction and preparation of a derivative work of Plaintiffs' copyright. Defendants have failed to exercise such supervision and/or control to the extent required under law.

82. As direct and proximate result of Defendants' failure, Defendants' customers and/or agents infringed and continue to infringe Plaintiffs' copyright in "*I've Got The Kind Of Love*" by reproducing, adapting, distributing, displaying, and/or publicly performing "*No Smoke at the Polo Lounge*."

83. As a result of Defendants' actions, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

84. Alternatively, Plaintiffs are entitled to the maximum statutory damages in such amounts as may be proper under 17 USC § 504(c).

85. Furthermore, Plaintiffs are entitled to attorneys' fees and costs under 17 USC § 505.

### AS AND FOR A SIXTH CAUSE OF ACTION
#### Equitable Accounting

86. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 85, as if fully set forth herein.

87. Upon information and belief, Defendants have profited, and will continue to profit, from the exploitation of "*No Smoke at the Polo Lounge*" which infringes upon Plaintiffs' copyright in "*I've Got The Kind Of Love.*"

88. Defendants have not provided the necessary documentation and/or information required for Plaintiffs to assess the damages they have suffered and continue to suffer.

89. Plaintiffs are entitled to a full accounting of all net profits received by Defendants in relation to the exploitation of "*No Smoke at the Polo Lounge*" because it infringes upon Plaintiffs' copyright in "*I've Got The Kind Of Love.*"

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### Injunctive Relief Against All Defendants

90. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 89, as if fully set forth herein.

91. As a direct and proximate result of Defendants actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm, for which there is no adequate remedy at law. Public interest would not be disserved by an injunction, preliminary or permanent, for the purposes of protecting Plaintiffs' copyright.

### AS AND FOR A EIGTH CAUSE OF ACTION
#### Unjust Enrichment Against All Defendants

92. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 91, as if fully set forth herein.

93. A benefit was conferred upon Defendant Robinson, the Sugar Hill Defendants, Defendant UMP, and Defendant 100 Ent., by the exploitation of the work "***No Smoke at the Polo Lounge***," performed by The Game, ft. Jeremih, as it infringes upon Plaintiffs' copyright in the musical composition "***I've Got The Kind Of Love***."

94. Defendants were enriched at the Plaintiffs' expense as they were never even contacted to discuss the use of their copyrighted work, let alone compensated. Defendants have benefited, and continue to benefit, at the expense of Plaintiffs.

95. Defendants should not, in equity and good conscience, be permitted to retain these benefits.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally:

A. Awarding Plaintiffs monetary damages, plus interest, pursuant to 17 USC § 504;

B. Enjoining Defendants from copying, distributing, publicly performing, or otherwise exploiting "***No Smoke at the Polo Lounge***" pursuant to 17 USC § 502;

C. Awarding Plaintiffs punitive damages, if permissible;

D. Awarding Plaintiffs costs, including their attorney's fees, pursuant to 17 USC 505]; and

E. Granting Plaintiffs such other and further relief as the Court deems just and proper.

*[Signature Page Follows]*

Dated: February 20, 2024
      New York, New York

                              Respectfully submitted,

                              **Anderson and Associates Law, P.C.**
*/s/ Yen-Yi Anderson*
Yen-Yi Anderson, Esq (5096268)
61 Broadway, Ste 2809
New York, NY 10006
Ph: (646) 201-9117
y.anderson@aalawpc.com